IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**CRAIG ANTONIO DAWSON,**

Petitioner,

v.

**CRIMINAL ACTION NO. 2:22-cr-31**
**CIVIL ACTION NO. 2:23-cv-481**

**UNITED STATES OF AMERICA,**

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Craig Antonio Dawson's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion," "§ 2255 Motion"). ECF No. 36 ("Mot."). The Government opposes the Motion. ECF No. 52 ("Resp. Opp'n"). The matter is now ripe for judicial determination, and the Court finds that a hearing is not necessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

For several months in 2018, Petitioner helped Charles Boomer maintain a residence in the Freedom Court neighborhood of Portsmouth, Virginia, ("Freedom Court residence") as a drug-involved premises. Statement of Facts, ECF No. 11 ¶ 14 ("SOF"). Petitioner served as the "doorman" by letting drug customers inside to conduct deals with Mr. Boomer. *Id.* Petitioner also completed chores around the house, and Mr. Boomer paid Petitioner in cocaine base. Presentence Investig. Rep., ECF No. 28 ¶ 16 ("PSR").

In September 2018, police officers were dispatched to the Freedom Court neighborhood in reference to two individuals with gunshot wounds. SOF ¶ 1. Upon arrival, they stopped Petitioner as he was driving out of Freedom Court in a white Ford Fusion with passengers Keith Redmen and Mr. Boomer. *Id.* The officers observed bloodstains on Mr. Redman's shirt and questioned him. *Id.* ¶ 2. Mr. Redman acknowledged he had been shot and claimed that he and the other occupants were on their way to the hospital. *Id.*

As the occupants stepped out of the vehicle at the officers' direction, the officers observed powder and crack cocaine, large sums of cash, and a handgun inside the vehicle. *Id.* ¶¶ 3–5. A search of the vehicle and Boomer's person revealed more powder and crack cocaine, cash, and a handgun magazine fitting the handgun. *Id.* ¶¶ 6–7. Officers also searched Petitioner and found he possessed about 11 grams of crack cocaine. *Id.* ¶ 10. The next day, further searches of the vehicle and the Freedom Court residence revealed more crack and powder cocaine, marijuana, digital scales, and a cartridge and bullet casings fitting the handgun. *Id.* ¶¶ 11–12.

In total, officers recovered about 78 grams of crack cocaine, 260 grams of powder cocaine, and 430 grams of marijuana from Petitioner, the white Ford Fusion, and the Freedom Court residence. *Id.* ¶ 13. Petitioner stipulates that he actually or constructively possessed all these drugs. *Id.* ¶ 14.

Petitioner later helped Mr. Boomer maintain another residence on King Street in Portsmouth, Virginia, ("King Street residence") as a drug-involved premises. *Id.* ¶ 16. In July and August 2019, agents from the Drug Enforcement Agency and local law enforcement conducted two controlled purchases of cocaine from Petitioner and Mr. Boomer at the King Street residence. *Id.* ¶¶ 15–16. In the first transaction, Petitioner sold 56 grams of cocaine to a cooperating source at the direction of Mr. Boomer. *Id.* ¶ 15. In the second transaction, Petitioner served as the doorman

and let the cooperating source into the King Street residence to purchase 83 grams of cocaine from Mr. Boomer. *Id.* On August 23, 2019, officers executed a search warrant on the King Street residence and arrested Petitioner. *Id.* ¶ 16. Officers recovered about 24 grams of cocaine, 24 grams of crack cocaine, digital scales, and other drug paraphernalia, all of which Petitioner and Mr. Boomer possessed. *Id.*

In December 2019, the Government informed Petitioner that it had evidence sufficient to present a multi-count indictment against him to a grand jury for violations of federal drug laws. ECF No. 1 at 2. Petitioner was initially appointed counsel in January 2020, and the Court later appointed Attorney Mary T. Morgan to represent Petitioner after his original counsel retired. Affidavit of Mary T. Morgan, ECF No. 52-1 ¶ 5 ("Morgan Aff."); *see* ECF No. 1 at 3–5.

On March 24, 2022, the Government filed a one-count Criminal Information charging Petitioner with Distribution of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). ECF No. 2. After several months of discussion with Ms. Morgan and on her advice, Petitioner pled guilty to the Information pursuant to a Plea Agreement in May 2022. Morgan Aff. ¶¶ 7–9; ECF Nos. 8–11.

In August 2022, Ms. Morgan filed a motion to withdraw from representation after Petitioner sent several letters to the Court stating that he "does not trust his lawyer." ECF No. 18 at 2. After conducting a hearing on the matter, the Court granted Ms. Morgan's motion to withdraw and appointed Attorney Paul A. Driscoll to represent Petitioner. ECF Nos. 20–22, 45. Mr. Driscoll represented Petitioner through sentencing. *See* Declaration of Paul A. Driscoll, ECF No. 52-2 ¶¶ 4, 13 ("Driscoll Decl."); ECF Nos. 26, 30.

On October 18, 2022, the Court conducted a sentencing hearing and sentenced Petitioner to 150 months in prison, followed by three years of supervised release. ECF No. 32. After

3

discussing the possibility of appeal with Mr. Driscoll, Petitioner did not appeal. *See* Driscoll Decl. ¶ 13.

Petitioner timely filed his § 2255 Motion on September 26, 2023. ECF No. 36. The Government responded in opposition on January 29, 2024. ECF No. 52. Petitioner did not reply.[1]

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). In a motion under § 2255 ("§ 2255 motion"), the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). *Pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

---

[1] On the day Petitioner's reply was due, he filed a *pro se* Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2) and the United States Sentencing Commission's 821 Amendment. ECF No. 53. The Court will resolve that motion separately.

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny

5

of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if the petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner asserts four Grounds for relief alleging that Ms. Morgan and Mr. Driscoll rendered ineffective assistance of counsel. As an initial matter, none of Petitioner's Grounds for relief apply to Ms. Morgan. All four Grounds relate to Petitioner's sentence and opportunity to appeal. Ms. Morgan withdrew from representation before the PSR was published and well before sentencing, meaning she was not authorized to make the objections and notice of appeal that

Petitioner argues his counsel should have made. Therefore, Petitioner does not show that Ms. Morgan's performance was deficient or prejudicial.

A. **Ground I: Failure to Object to Petitioner's Career Offender Enhancement Based on His 2002 State Offense**

In Ground I, Petitioner claims that Mr. Driscoll was ineffective for failing to object to the career offender enhancement he received based on his 2002 conviction in Virginia state court. Petitioner argues that because the conviction was 20 years old at the time of sentencing in this case, it lies outside the 15-year period for prior convictions to apply toward a career offender enhancement under the United States Sentencing Guidelines ("Guidelines," "U.S.S.G").[2] Mem. Supp. at 3; *see* U.S.S.G. § 4A1.2(e)(1) (2021). Petitioner also complains that Mr. Driscoll did not conduct adequate legal research to determine that this challenge was warranted. *Id.* at 2–3; Pet'r's Decl. ¶ 3, ECF No. 36-2.

In April 2002, Petitioner was convicted in Portsmouth Circuit Court in Portsmouth, Virginia, for Possession with Intent to Distribute Cocaine. PSR ¶ 57; Mot. Ex. A, ECF No. 36-1. Petitioner was sentenced to five years in prison, with four years and five months suspended, and

---

[2] Petitioner also makes several undeveloped claims challenging his career offender status: (1) The Court erred by failing to define the offense underlying the 2002 conviction as a "serious" drug offense before allowing it to support the career offender enhancement; (2) the Virginia statute he was convicted under in 2002 is "overbroad" because it criminalizes more conduct than federal law does; and (3) he was coerced into signing an affidavit admitting to possession of cocaine in the 2002 case. Mot. at 4; Mem. Supp. at 2–6; Pet'r's Decl. ¶¶ 2, 14–16. First, whether a past crime is a "serious drug offense" is only relevant to firearm offenses under 18 U.S.C. § 924 and corresponding Guideline calculations for armed career criminals, neither of which apply here. *See* 18 U.S.C. § 924(e); U.S.S.G. § 4B1.4, Application Note 1. Second, Petitioner offers no supporting evidence of these claims and does not appear to have ever raised them to counsel. Finally, Petitioner's 2002 conviction has stood for over 20 years, and he does not claim to have ever challenged its validity in state court. Therefore, these claims are "palpably incredible" and may be summarily dismissed. *United States v. White*, 366 F.3d 291, 296–97 (4th Cir. 2004); *see also Umar v. United States*, 161 F. Supp.3d 366, 375 (E.D. Va. 2015) ("Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of th[e] test articulated in *Strickland*." (internal quotation and citation omitted)). Counsel has no duty to investigate frivolous claims, and counsel's performance was neither deficient nor prejudicial for failing to investigate or pursue these arguments. *Kersey v. Davis*, 1:15cv133 (TSE/MSN), 2016 WL 775773, at *13 (E.D. Va. Feb. 25, 2016) (citing *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005), *cert. denied*, 546 U.S. 1108 (2006)).

two years of supervised probation. PSR ¶ 57. Petitioner's probation was revoked three times thereafter: once in 2003, followed by a seven-month active sentence; next in 2007, followed by a one-year active sentence; and finally in 2008, followed by a twelve-month active sentence. *Id.*; Driscoll Decl. ¶ 6.

Under the 2021 Guidelines, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." U.S.S.G. § 4A1.1, Application Note 1 (2021) (citing U.S.S.G. § 4A1.2(e)). Revocations of supervised release or probation are not considered separate sentences; instead, "the sentence given upon revocation [is] added to the original sentence of imprisonment, if any, and the total [is] counted as if it were one sentence." U.S.S.G. § 4A1.1(k), Application Note 11 (2021). Based on these Guidelines, Petitioner's 2007 and 2008 revocations cause the sentence for his 2002 conviction to extend into the fifteen-year period preceding the offense conduct here, meaning the career offender enhancement was properly applied.

Because the career offender enhancement clearly applies, Mr. Driscoll satisfied his duty to adequately research this issue simply by looking to U.S.S.G. § 4A1.1 itself and explaining to Petitioner how the Guideline applies to him. In a September 2022 conference, Mr. Driscoll explained to Petitioner that there "is no winning argument for suggesting the 2002 conviction . . . should be excluded." Driscoll Decl. Ex. 1. Nevertheless, Mr. Driscoll informed the Government of Petitioner's objection to the career offender enhancement. Driscoll Decl. Ex. 2. The Government maintained that U.S.S.G. §§ 4A1.2(a) and (k) apply and that Petitioner committed the offense conduct "well within" the fifteen-year period. Driscoll Decl. Ex. 3. Mr. Driscoll later explained the Government's position to Petitioner and reiterated that "inclusion of the 2002 conviction is a straightforward application of the U.S. Sentencing Guidelines." Driscoll Decl. Ex. 4.

8

Rather than object to the career offender enhancement, Mr. Driscoll presented mitigating facts to argue for a downward variance from the Guideline range. PSR at 38; *see generally* Def.'s Position on Sentencing, ECF No. 26. Mr. Driscoll aptly explained his decision ahead of time to Petitioner: "Arguing that the Sentencing Guidelines do not apply to the 2002 conviction when the guidelines plainly do undercuts the strength of an argument for downward variance." Driscoll Decl. Ex. 4. Mr. Driscoll also explained that arguing for a downward variance was more likely to withstand appeal. *Id.* This kind of strategic decision making is emblematic of effective counsel. *See Strickland*, 466 U.S. at 690; *Terry*, 366 F.3d at 317. And Mr. Driscoll's choice worked in Petitioner's favor; the Court sentenced Petitioner to 150 months in prison, a 38-month downward variance from the Guideline minimum of 188 months. J., ECF No. 32; PSR at 33.

Mr. Driscoll was correct that the Guidelines clearly foreclosed Petitioner's desired challenge to his career offender status. Therefore, Mr. Driscoll's limited research and ultimate decision not to raise the challenge were reasonable. *Strickland*, 466 U.S. at 691; *see also Wright v. Clarke*, 860 Fed. App'x 271, 278 (4th Cir. 2021) (evaluating decision not to investigate the law under the *Strickland* standard of reasonableness). There is also no reasonable likelihood that raising the challenge would have led to a different result than what Mr. Driscoll obtained by persuasively arguing for a downward variance *See Strickland*, 466 U.S. at 688, 694. Therefore, Mr. Driscoll's performance was neither deficient nor prejudicial. Ground I is DENIED.

**B.     Ground II: Failure to Argue for a Minor Role Adjustment**

In Ground II, Petitioner argues that Mr. Driscoll should have requested a minor role adjustment because he played a lesser role in Mr. Boomer's drug operation than Mr. Boomer and other operation members. Mem. Supp. at 6–8. Petitioner insists that he did not know the "inner workings" of Mr. Boomer's operation and that he simply received "drugs, lunch money[,] and a

place to stay" in exchange for doing chores at Mr. Boomer's drug-involved residences. *Id.* at 6. Under U.S.S.G. § 3B1.2(b), a defendant is eligible for a two-point offense level reduction if they were a "minor participant in any criminal activity," meaning the defendant was "less culpable than most other participants in the criminal activity" but still played more than a "minimal" role. U.S.S.G. § 3B1.2(b) & Application Note 5 (2021).

"[C]ounsel is not required to make frivolous arguments in order to be effective." *Kersey v. Davis*, 1:15cv133 (TSE/MSN), 2016 WL 775773, at *13 (E.D. Va. Feb. 25, 2016) (citing *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005), *cert. denied*, 546 U.S. 1108 (2006)). Counsel also need not "press nonfrivolous points" if he, "as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" *Strickland*, 466 U.S. at 690.

Contrary to Petitioner's claims, Mr. Driscoll did not ignore Petitioner's arguments about his role in the drug operation; rather, he tested their strength and made a strategic choice to present them as mitigating factors instead of attacking the Guideline calculations. *See, e.g.*, Mem. Supp. at 6–7; Pet'r's Decl. ¶¶ 6–7, 9. After reviewing the PSR with Petitioner, Mr. Driscoll provided the Probation Office and the Government with several of Petitioner's factual objections related to the offense conduct. Driscoll Decl. Ex. 2. For example, Petitioner disputed that he "sold cocaine base and cocaine for Mr. Boomer (except perhaps at Mr. Boomer's direction) or that he purchased cocaine in one-ounce quantities from Mr. Boomer." *Id.* The Government responded that Petitioner's objections directly contradicted the stipulated Statement of Facts and his own statements to law enforcement. Driscoll Decl. Ex. 3. The Government indicated that if Petitioner raised these objections in court, he would be subject to cross examination, possibly lose his three-

10

point reduction for acceptance of responsibility, and possibly receive a two-point enhancement for obstruction of justice. *Id.* The Government also warned that if Petitioner denied his statements made under oath or to law enforcement, it would "kill any (albeit already low) chance he receives a reduction for cooperation."[3] *Id.*

Soon after receiving the Government's response, Mr. Driscoll discussed it with Petitioner and the two reviewed each stipulation in the Statement of Facts together. Driscoll Decl. Ex. 3. Petitioner did not dispute any stipulation and expressed no desire to withdraw his guilty plea or make factual objections at sentencing. Driscoll Decl. at 4 ¶ 10; Driscoll Decl. Ex. 4. As Mr. Driscoll explained, Petitioner already swore under oath that he understood the Government's drug distribution charge, swore that the Statement of Facts is accurate, and signed every page of the Statement of Facts. Driscoll Decl. Ex. 4; Plea Hr'g Tr. at 8:8–9:8, 16:17–17:1; *see generally* SOF. In particular, Petitioner stipulated that he distributed cocaine quantities well beyond those associated with personal use, including the 56 grams of cocaine he sold in 2019. SOF ¶ 15; *see* Driscoll Decl. at ¶ 12.

Based on Petitioner's sworn and unsworn affirmations of the Statement of Facts, Mr. Driscoll reasonably concluded that a mitigating role adjustment was not "supported by the facts or the law." Driscoll Decl. at 4 ¶ 11. Rather than pursue meritless arguments, Mr. Driscoll requested a sentence of 80 months and effectively presented mitigating facts supporting a downward variance from the Guideline sentencing range. First, Mr. Driscoll argued that Petitioner did not discharge a firearm, unlike Mr. Redmond, and that he was not arrested with firearms on his person, unlike another related defendant, Michael Howard. Def.'s Position on Sentencing at 7–8; Sentencing Hr'g

---

[3] Based on context from the record, the Court understands the Government's warning to refer to a sentence reduction pursuant to U.S.S.G. § 5K. *See* Driscoll Decl. Ex. 3; Mot. Hr'g Tr. at 3:18–4:17, 12:13–14:3, ECF No. 45 (discussing Petitioner's desire for the Government to file a motion pursuant to § 5K).

11

Tr. at 11:10–12:6; *see also* PSR ¶ 8. Second, Mr. Driscoll highlighted that Mr. Boomer, the leader of the drug operation, received 192 months in prison; Mr. Redman, "the enforcer," received a mandatory minimum 120 months; and Mr. Howard, "the distributor," received 112 months. Def.'s Position on Sentencing at 4–5; Sentencing Hr'g Tr. at 11:14–12:6. Finally, Mr. Driscoll emphasized that Petitioner merely served as "the butler" of the operation and that Mr. Boomer paid Petitioner in crack cocaine, feeding his severe drug addiction. Def.'s Position on Sentencing at 5; *see* Sentencing Hr'g Tr. at 12:7–19, ECF No. 46; Driscoll Decl. ¶ 12.[4] The Court took these mitigating facts into account, granted a downward variance of 38 months below the Guideline minimum, and sentenced Petitioner to 150 months.[5] *See* Sentencing Hr'g Tr. at 17:4–17, 22:25–23:10, 24:9–12; J., ECF No. 32.

Petitioner does not show that Mr. Driscoll's performance was objectively unreasonable or that there is a reasonable probability that Petitioner would have received a lesser sentence if Mr. Driscoll had argued for a minor role adjustment. *See Strickland*, 466 U.S. at 688, 694. Ground II is DENIED.

### C. Ground III: Failure to Object to the Two-Point Firearm Enhancement

In Ground III, Petitioner argues Mr. Driscoll should have objected to the firearm enhancement he received because he did not "spatially" or "temporally" possess the firearms found in the white Ford Fusion in September 2018. *See* Mem. Supp. at 8–9; SOF ¶ 5.

The relevant Guideline firearm "enhancement [is] applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G.

---

[4] This record plainly disproves Petitioner's allegations that Mr. Driscoll knew about his circumstances but failed to argue mitigating factors in favor of a reduced sentence. *See* Mem. Supp. at 6; Pet'r's Decl. ¶¶ 7, 18, 21.

[5] If Mr. Driscoll successfully argued for a minor role adjustment, Petitioner's Guideline Range would have been 151 to 188 months based on a reduced Total Offense Level of 29. U.S.S.G. § 5A (2021); *see* PSR ¶¶ 29–40. This adjusted Guideline range is still higher than Petitioner's actual sentence, meaning Petitioner cannot demonstrate prejudice here.

§ 2D1.1(b)(1) (2021). The gun in the white Ford Fusion was "present" at the time of the offense conduct, and it is not "clearly improbable" that it was not associated with Petitioner and Mr. Boomer's drug dealing operation. Driscoll Decl. at 4–5 ¶ 10; *see* SOF ¶¶ 5, 13–14. After recognizing there was "no dispute" that firearms were in the Ford Fusion and the Freedom Court and King Street residences, Mr. Driscoll concluded once again that challenging the firearm enhancement was not "supported by the facts or the law." Driscoll Decl. 4–5 ¶ 10; *see* PSR ¶ 23. Again, "counsel is not required to make frivolous arguments in order to be effective." *Kersey*, 2016 WL 775773, at *13.

As explained above, Mr. Driscoll effectively argued that Petitioner did not fire a weapon and was not arrested with two firearms, in contrast to Mr. Redman and Mr. Howard. Def.'s Position on Sentencing at 7–8; Sentencing Hr'g Tr. at 11:10–12:6; *see also* PSR ¶ 8. Mr. Driscoll's arguments earned Petitioner a significant downward variance and a sentence of 150 months.

Because the firearm enhancement applies here, Mr. Driscoll's decision not to challenge it was reasonable, and there is no reasonable probability that Petitioner would have received a lesser sentence if Mr. Driscoll had made the challenge.[6] Therefore, Ground III is DENIED.

**D.    Ground IV: Failure to File Notice of Appeal**

Petitioner claims that Mr. Driscoll was ineffective for failing to adequately consult him about a potential appeal and failing to file such notice.

An attorney must consult with his client when there is a "reasonable" basis to believe that "(1) a rational defendant would want to appeal or (2) the defendant reasonably demonstrated to his

---

[6] As with the minor role adjustment, if Mr. Driscoll had successfully challenged the firearm enhancement, Petitioner's Guideline Range would have been 151 to 188 months based on a Total Offense Level of 29, which is still higher than Petitioner's actual sentence. U.S.S.G. § 5A (2021); *see* PSR ¶¶ 29–40. And even if Mr. Driscoll were successful on both arguments, Petitioner's Guideline Range would have been 130 to 162 months based on a Total Offense Level of 27. U.S.S.G. § 5A (2021). Petitioner's sentence falls within this range, underscoring that he cannot demonstrate prejudice.

13

attorney that he was interested in appealing." *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007) (*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). Consultation consists of "advising the defendant about the advantages and disadvantages of taking an appeal[] and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. If counsel adequately consults with the defendant, counsel is only deficient if he "fail[s] to follow the defendant's express instructions with respect to an appeal." *Id.* These duties of counsel still apply in cases where the defendant waives his right to appeal. *See Poindexter*, 492 F.3d at 271.

If a defendant "unequivocally instructs [his] attorney to file a timely notice of appeal" but the attorney does not do so, "prejudice is presumed because it results in the 'forfeiture' of the appellate proceeding." *Id.* at 268 (*citing Flores-Ortega*, 528 U.S. at 483). When a defendant does not expressly instruct counsel to file an appeal and counsel accordingly does not file, the defendant must prove that "had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." *Id.* at 268–69 (quoting *Flores-Ortega*, 528 U.S. at 486). In general, evidence of "non-frivolous grounds for appeal" or that the defendant immediately "expressed a desire to appeal" is "highly relevant in making the prejudice determination." *Flores-Ortega*, 528 U.S. at 485.

Petitioner admits that Mr. Driscoll consulted him about the possibility of appeal and that he never asked Mr. Driscoll to file a notice of appeal. Mem. Supp. at 10; Pet'r's Decl. ¶ 22; *see also* Driscoll Decl. ¶ 13; Driscoll Decl. Ex. 5. According to Mr. Driscoll's sworn statement, he and Petitioner agreed that there were no meritorious advantages to an appeal. Driscoll Decl. ¶ 13. Mr. Driscoll also said he would explain as much to the Court of Appeals if Petitioner instructed him to file a notice of appeal. *Id.*; Driscoll Decl. Ex. 5 (citing *Anders v. California*, 386 U.S. 738 (1967)). Petitioner alleges that Mr. Driscoll "complained about having to draft such a lengthy brief[,] . . .

14

suggested [that] appealing would be a waste of time[,] and [suggested that Petitioner] may receive more time" by filing an appeal. *See* Mem. Supp. at 10; Driscoll Decl. Ex. 5. But Petitioner does not rebut Mr. Driscoll's sworn statements or exhibits, and there is no evidence he ever responded to Mr. Driscoll's final letter summarizing their discussion about a potential appeal. *See* Driscoll Decl. Ex. 5. Based on this record, the Court finds that Mr. Driscoll adequately consulted Petitioner and gave him reasonable advice.

Petitioner still argues that Mr. Driscoll should have filed an appeal because it is procedurally possible when a defendant has waived his right to appeal. *See* Mem. Supp. at 10–11; *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (holding that "the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether the defendant has signed an appeal waiver"). Petitioner argues that Mr. Driscoll should have challenged his career offender status based on the 2002 conviction and the firearm enhancement. Mem. Supp. at 10. Yet for the reasons discussed above regarding Grounds I and III, Mr. Driscoll reasonably rejected Petitioner's requests to challenge these Guideline applications at sentencing. Those arguments would be no stronger or more reasonable to raise on appeal. Petitioner agreed that there were no nonfrivolous grounds for appeal, and Mr. Driscoll was well justified in warning Petitioner that he would explain that to the Fourth Circuit if Petitioner decided to appeal. *See Poindexter*, 492 F.3d at 271 ("If a notice of appeal is ultimately filed . . . [and] the appropriate review reveals only frivolous issues, the attorney can file a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)."). Such a warning is part of explaining the disadvantages of appeal where no meritorious advantages exist.

Petitioner's passing claim that he could not have contemplated the nature of the sentence received also fails based on the record. *See* Mem. Supp. at 6, 10. There exists only a "narrow class

15

of claims involv[ing] errors that the defendant 'could not have reasonably contemplated' when the plea agreement was executed." *Poindexter*, 492 F.3d at 270. The Fourth Circuit has "refused to enforce valid appeal waivers for [that] narrow class of claims, . . . based on [its] determination that those claims were not within the scope of the waiver." *Id.* (quoting *United States v. Blick*, 408 F.3d 162, 167–68 (4th Cir. 2005)).

Petitioner claims that he "received more [prison] time than anticipated." Mem. Supp. at 6. Yet the Plea Agreement states that Petitioner's offense carries a maximum term of 20 years in prison, and Petitioner agreed to waive his right to appeal so long as his sentence falls within the statutory range. Plea Agreement at 1, 4. Petitioner also confirmed under oath that he understood the maximum sentence and waiver of appeal. Plea Hr'g Tr. 8:8–14, 9:4–23. Therefore, Petitioner does not credibly allege that he did not reasonably contemplate a sentence of 150 months in prison, and his claim plainly falls within the scope of his waiver.[7]

In sum, Petitioner does not prove his claim by a preponderance of evidence, even when viewing the facts in light most favorable to Petitioner. *See Miller*, 261 F.2d at 547; *Poindexter*, 492 F.3d at 263 (noting that denial of § 2255 relief without an evidentiary hearing is "akin to a ruling on a motion for summary judgment"). Instead, the record "conclusively show[s] that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Mr. Driscoll consulted Petitioner about the advantages and disadvantages of appeal, but Petitioner never instructed him to file. Petitioner also waived his right to appeal, and he identifies no meritorious grounds for appeal that Mr.

---

[7] Before the PSR was created, Ms. Morgan also accurately estimated Petitioner's Guideline Range of 188 to 235 months and explained it to him in writing. Morgan. Aff. ¶¶ 22–23. But it is unclear whether Ms. Morgan provided this estimate before or after Petitioner pled guilty, so the Court does not consider it to determine what Petitioner understood about his potential sentence at the time of his plea. To the extent Petitioner claims his sentence was higher than he anticipated at the time the PSR was published, however, that claim is incredible because of Ms. Morgan's accurate written estimates.

Driscoll should have raised. Therefore, Mr. Driscoll's performance was neither deficient nor prejudicial, and Ground IV is DENIED.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion (ECF No. 36) is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Because Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date.

The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June 11, 2024

Raymond A. Jackson
United States District Judge